PEOPLE *v.* LONNIE PAYNE.

1. CRIMINAL LAW—ARMED ROBBERY—EVIDENCE—SUFFICIENCY.
   Testimony by witnesses of armed robbery that defendant entered a food store and asked an employee to get him a beer, accompanied him to the rear of the store where the beer was obtained and returned toward the front of the store where they approached the manager, that the defendant took a revolver from the manager and held it in one hand and his own gun in the other, and then robbed them, testimony of both the employee and the manager identifying defendant as the robber, and further testimony by the manager that defendant was an old customer to whom he had once loaned $3, *held*, sufficient evidence, if believed by the jury, to sustain a conviction of armed robbery beyond a reasonable doubt (CLS 1961, § 750.529).

2. TRIAL—CONDUCT OF JUROR—PREJUDICE.
   Action of juror in trial for armed robbery, in sitting in spectators' seats near an open window in courtroom reading a newspaper during the lunch hour, *held*, not to cause reversible error where the record fails to show that the defendant was prejudiced by the juror's conduct (CLS 1961, § 750.529).

3. CRIMINAL LAW—NEW TRIAL—GROUNDS—NEWLY DISCOVERED EVIDENCE.
   Affidavits presented by defendant in support of motion for new trial for armed robbery on grounds of newly discovered evidence that defendant was not present when the robbery took place, which contradict the testimony of the alibi witnesses presented by defendant at trial, *held*, not to require a new trial where it does not appear from the record that had the witnesses testified a different verdict would have been rendered, and the conviction was supported by the direct testi-

REFERENCES FOR POINTS IN HEADNOTES

[1]  46 Am Jur, Robbery §§ 50–54.
[2]  53 Am Jur, Trial §§ 893, 895.
[3]  39 Am Jur, New Trial §§ 156, 165.
[4]  58 Am Jur, Witnesses §§ 647, 664.

mony of eyewitnesses who had ample time to observe the defendant while he was in the process of committing the armed
robbery (CLS 1961, § 750.529).

4. TRIAL—CROSS-EXAMINATION—LEADING QUESTIONS.

Cross-examination of alibi witness in trial for armed robbery
which elicited answer from witness that she and another alibi
witness had compared their recollections of what happened
on the night of the robbery, and that where they differed one
of the witnesses would change her mind to make her story
conform to that of the other witness, *held*, proper cross-examination (CLS 1961, § 750.529).

Appeal from Kent, Hoffius (Stuart), J. Submitted
Division 3 February 7, 1968, at Grand Rapids.
(Docket No. 3,080.)   Decided August 29, 1968.
Leave to appeal denied by Supreme Court December
11, 1968.  381 Mich 792.

Lonnie Payne was convicted of robbery armed.
Defendant appeals.  Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *James K. Miller,*
Prosecuting Attorney, and *A. Raymond Kalliel,* Assistant Prosecuting Attorney, for the people.

*Hillman, Baxter & Hammond,* for defendant on
appeal.

J. H. GILLIS, J. Defendant Lonnie Payne was
convicted by a jury of armed robbery.[1] It was alleged that on March 4, 1966 appellant entered the
Madison Food Store and asked Leroy Height, an
employee, to get him a beer. Height went to the rear
of the store and obtained a beer from the cooler.
As he returned to the front of the store with the
defendant following, they approached Chatfield

---

[1] CLS 1961, § 750.529 (Stat Ann 1968 Cum Supp § 28.797).

Young, the store manager, who was facing the opposite direction. The defendant grabbed a revolver sticking out of Mr. Young's pocket, who then turned around and observed the defendant now holding a gun in each hand. The robbery followed. Both Height and Young in their testimony identified defendant as the perpetrator. Additionally, Mr. Young testified that defendant was an old customer to whom he had once loaned $3. The defense was based on an alibi supported by the testimony of 2 girls.

On appeal defendant presents the following issues for our consideration: (1) was the verdict of the jury supported by sufficient evidence to sustain a conviction of armed robbery beyond a reasonable doubt? (2) did the trial court err in denying defendant's motion for a new trial based on an allegation that one of the jurors, during a noon recess, talked with a law enforcement officer who, defendant believes, might have been connected with the case? (3) did the court err in failing to grant a new trial on the basis of newly discovered evidence? (4) did the court err in permitting the prosecution to ask certain questions of the alibi witnesses?

A review of the record in the instant case establishes that there was sufficient evidence to sustain a conviction of armed robbery beyond a reasonable doubt if the trier of the facts believed the testimony of the witnesses presented by the people.

In answer to the second issue, the prosecuting attorney filed an affidavit.[2] The record fails to show

---

[2] "I, A. Raymond Kalliel, being first duly sworn, deposes and says that I was the Assistant Prosecuting Attorney, who prosecuted the case of The People of the State of Michigan vs. Lonnie Payne, for armed robbery.

"During the lunch recess on one of the days of the trial, I walked into the courtroom and observed one of the jurors sitting at the far end of the courtroom in the spectators' seats near an open window reading a newspaper. Outside in the hallway were some persons and the counsel for the defendant, Alexander S. Jarosz.

that the defendant was prejudiced by this conduct on the part of the juror.

On the third issue presented for our review, the affidavits presented in support of the defendant's contention that he was not present when the robbery took place contradict the alibi witnesses presented by the defendant at trial. It does not appear from this record that, had these witnesses testified, a different verdict would have been rendered.

The record demonstrates that the defendant's conviction was supported by the direct testimony of eyewitnesses who had ample time to observe the defendant while he was in the process of committing the offense charged.

The final issue raised by the defendant pertains to the propriety of the cross-examination of the defense witnesses. The pertinent testimony to which the defendant takes exception consisted of the following:

"*Q*. [*By Mr. Kalliel (prosecuting attorney)*]: Would you consider yourself a friend of Lonnie Payne?

"*A*. Yes.

"*Q*. And are you a friend of Marie Ingram?

"*A*. Yes.

"*Q*. How does it happen Lonnie lives at your home —lived at your home?

---

After observing the juror, I walked out of the courtroom and notified Mr. Jarosz that the juror was seated in the courtroom and asked him if I should ask the juror to return to the jury room. Mr. Jarosz indicated in the affirmative and I then asked the juror if he would return to the jury room which he did, explaining that he was merely seated near the window during the lunch hour to take advantage of the fresh air and the breeze. To my knowledge, the juror was not engaged in any conversation with anyone nor did he overhear any conversation that might have been taking place. At the time, Mr. Jarosz did not place any importance on the fact that this juror was in the courtroom.

/s/ A. Raymond Kalliel

"A. Raymond Kalliel
"Assistant Prosecuting Attorney"

"*Mr. Jarosz* [*defense counsel*]: I object to that. He lives there.

"*Mr. Kalliel:* Why?

"*Mr. Jarosz:* How does it happen?

"*The Court:* Objection overruled. She may answer.

"*A.* Marie and Lonnie were going together.

* * *

"*Q.* And discussed the events of what happened that night?

"*A.* Yes.

"*Q.* You and she have compared what happened that night, haven't you?

"*A.* Yes, we have.

"*Q.* And one of you would say one thing and the other said, 'No, that isn't true,' isn't that right?

"*A.* Yes.

"*Q.* And then you'd say, 'Oh, I guess it is true,' wouldn't you?

"*A.* If—I mean—

"*Q.* Is that right?

"*A.* Yes.

"*Mr. Jarosz:* I object to this, your Honor, trying to establish what she'd say. I let him go on a little bit. He is begging the answers now.

"*The Court:* This is cross-examination. You may continue."

We agree with the trial judge in his view that this was proper cross-examination.

We find no reversible error in the issues presented for our review. Affirmed.

FITZGERALD, P. J., and BOWLES, J., concurred.